UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERVIN E. BLUMHORST,<br><br>        Plaintiff,<br><br>    v.<br><br>PIERCE MANUFACTURING, INC., a Wisconsin corporation, AKRON BRASS COMPANY, a Delaware corporation, and john Does I through X,<br><br>        Defendants.<br><br>PIERCE MANUFACTURING, INC., a Wisconsin corporation,<br><br>        Third-Party Plaintiff,<br><br>    v.<br><br>WATEROUS COMPANY, a Minnesota corporation<br><br>        Third-Party Defendant. | Case No. 4:10-cv-00573-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT PIERCE MANUFACTURING, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 63)** |

      Now pending before the Court is Defendant Pierce Manufacturing, Inc.'s Motion for Summary Judgment (Docket No. 63). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

### I. BACKGROUND

      On September 30, 2008, Plaintiff Ervin E. Blumhorst ("Blumhorst"), a firefighter, was injured by a "wye" valve that apparently broke away from a fire truck. The fire truck was

**MEMORANDUM DECISION AND ORDER - 1**

designed and manufactured by Defendant Pierce Manufacturing, Inc. ("Pierce"), while the wye valve itself was manufactured by Defendant Akron Brass ("Akron"). Blumhorst alleges that "the dangerous and defective condition and design of the [f]ire [t]ruck and/or the [w]ye [v]alve" caused him to "suffer[ ] severe and permanent personal injuries, including . . . sever[e] trauma and pain, an injury to his head, and a left knee multi-ligament injury." *See* Pl.'s Compl., ¶ 7 (Docket No. 1, Att. 3). Specifically, Blumhorst claims that (1) the fire truck and wye valve were defective, (2) Pierce and Akron failed to adequately warn of the dangerous properties and design of the fire truck and wye valve, and (3) Pierce and Akron failed to equip the fire truck with safety devices or take reasonable safety precautions to prevent foreseeable injuries. *See id.* at ¶¶ 9(a)-9(d). In turn, Plaintiff asserts negligence, breach of warranty, and strict liability in tort causes of action against both Pierce and Akron. *See id.* at ¶¶ 8-14.

Through the at-issue Motion for Summary Judgment, Pierce argues that each of Blumhorst's claims must be dismissed because (1) the "government contractor defense" immunizes Pierce from liability given that the Bonneville County Rural Fire Protection District (the "Bonneville Fire Department") required Pierce to install the pump – manufactured by Third-Party Defendant Waterous Company ("Waterous") – (the "Waterous Pump") containing the allegedly defective wye valve; (2) Blumhorst cannot show that the allegedly defective warnings were causally linked to his accident; and (3) the "firefighter's rule" bars Blumhorst's claims. *See* Def.'s Mem. in Supp. of MSJ, pp. 10-19 (Docket No. 63, Att. 1).

## II.  DISCUSSION

A.     **Motion for Summary Judgment: Standard of Review**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to

**MEMORANDUM DECISION AND ORDER - 2**

judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwanted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *See id*. at 255. Direct testimony of the non-movant must be believed, however implausible. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255. If a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *See id*.

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support

**MEMORANDUM DECISION AND ORDER - 3**

the non-moving party's case.  *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).  This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor.  *See Deveraux*, 263 F.3d at 1076.  The non-moving party must go beyond the pleadings and show "by . . . affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists.  *Celotex*, 477 U.S. at 324.

The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)).  Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts."  *So. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).  Only admissible evidence may be considered in ruling on a motion for summary judgment.  *See Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(c).

**B.   The Government Contractor Defense Does Not Preclude Blumhorst's Claims Against Pierce**

Under Idaho law, "a public or private contractor following plans and specifications prepared by another party is not liable in negligence where defects in the plans and specifications cause injuries, so long as the contractor should not have reasonably known about the defects." *Craig Johnson Const., L.L.C. v. Floyd Town Architects, P.A.*, 134 P.3d 648, 653 (Idaho 2006). This "government contractor" defense "protects the reasonable reliance of the contractor on plans generated by another party, and at the same time respects the general proposition that where there is no fault, there should be no liability, regardless of the charter of the parties

**MEMORANDUM DECISION AND ORDER - 4**

involved." *Id*. Here, Pierce argues that the government contractor defense insulates it from liability because it supplied the Bonneville Fire Department with a fire truck that met all of the Bonneville Fire Department's written specifications – including a Waterous Pump. *See* Def.'s Resp. to Pl.'s Supplement, p. 1 (Docket No. 99).

The Bonneville Fire Department evaluated bid proposals "according to specifications furnished by the Fire District and on the basis of delivery date and price as best suits the needs of the Fire District." *See* Ex. 2 at p. 2 to Schimaneck Decl. at ¶ 4 (Docket No. 63, Att. 6). As to those specifications relating to the Waterous Pump, the Bonneville Fire Department required:

> Pump shall be a Waterous CSV, 1250 GPM, single stage midship mounted centrifugal type, carefully designed in accordance with good modern practice. Pump shall be the class "A" type and shall deliver the percentage of rated discharge at pressure indicated below:
>
> 100% of rated capacity at 150 PSI net pump pressure
> 70% of rated capacity at 200 PSI net pump pressure
> 50% of rated capacity at 250 PSI net pump pressure
>
> ....
>
> A Waterous adjustable relief valve, specially designed for fire service, shall be provided. Valve shall be positive and quick acting and have instantaneous on-off control.

*See id*. at pp. 3 & 5. In turn, Pierce drafted a bid proposal matching these specifications. *See* Ex. 1 at pp. 21-23 to Hearn Aff. at ¶ 1 (Docket No. 82, Att. 1). Once the Bonneville Fire Department accepted Pierce's bid, Pierce built the fire truck and sold it to the Bonneville Fire Department.

The record indicates that the Bonneville Fire Department specified the use of a Waterous Pump. However, there is no evidence that the Bonneville Fire Department had any role in the actual design specifications for the Waterous Pump beyond simply stating that it be a centrifugal pump meeting certain capacities, that it "carefully designed in accordance with good modern

**MEMORANDUM DECISION AND ORDER - 5**

practice," and that its relief valve be "specially designed for fire service." *See supra*. Put simply, the current record shows that the Bonneville Fire Department ordered that an existing, self-contained, Waterous Pump (designed and manufactured elsewhere) be incorporated along with other components into its anticipated fire truck. There simply is no evidence that the Bonneville Fire Department had anything to do with the Waterous Pump's design.

Such facts do not establish the government contractor defense; more involvement is needed from the Bonneville Fire Department. *See, e.g.*, *In re Agent Orange Product Liability Litigation*, 517 F.3d 76, 90 (2nd Cir. 2008) ("If the government buys a product 'off-the-shelf' – 'as-is' – the seller of that product cannot be heard to assert that it is protected from the tort-law consequences of the product's defects. Where the government is merely an incidental purchaser, the seller was not following the government's discretionary procurement decisions."). As a result, on this record, the government contractor defense does not apply to preclude Blumhorst's claims against Pierce – at the very least, disputed material facts exist as to the Bonneville Fire Department's actual role, if any, in arriving upon and/or approving the Waterous Pump's design and manufacture before incorporating the same into its fire truck.[1] Pierce's Motion for Summary Judgment is therefore denied in this respect.

**C.     A Dispute of Material Fact Exists as to Whether a Failure to Warn Contributed to Blumhorst's Injuries**

"Failure to warn can be a basis for recovery in a products liability action, whether alleged under a theory of strict liability in tort or negligence." *Puckett v. Oakfabco, Inc.*, 979 P.2d 1174, 1181 (Idaho 1999) (citing *Watson v. Navistar Int'l Trans., Corp.*, 827 P.2d 656, 673 (Idaho

---

[1] An issue of fact also exists as to whether Pierce met its duty to warn the Bonneville Fire Department and end users as to the Waterous Pump's proper use – an additional element of the government contractor defense. *See Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988); *Craig Johnson Const.*, 134 P.3d at 653.

**MEMORANDUM DECISION AND ORDER - 6**

1992)). "A product is defective if 'the defendant 'has reason to anticipate that danger may result from a particular use' of his product and fails to give adequate warnings of such danger.'" *Id*. (quoting *Rindlisbaker v. Wilson*, 519 P.2d 421, 428 (Idaho 1974) (quoting Restatement (Second) of Torts § 402A cmt. h (1977))). Pierce argues that the warnings accompanying the involved fire truck were adequate and, therefore, Blumhorst's product liability-related claims must fail. *See* Def.'s Mem. in Supp. of MSJ, p. 16 (Docket No. 63, Att. 1) ("A reasonable warning delivered with the product to the consumer is a complete defense in a strict liability case.").

In support of this argument, Pierce points to two different "warnings," addressing the conduct that Blumhorst engaged in when injured while pressure-testing the fire trucks' hoses. The first "warning," embossed on the Waterous Pump panel above the discharge relief valve on the outside of the fire truck, reads:

> REDUCE PRESSURE SLIGHTLY WITH THROTTLE BEFORE TURNING RELIEF VALVE OFF.

*See* Ex. 15D at p. 5 to Schimaneck Decl. at ¶ 17 (Docket No. 63, Att. 19); *see also* Ex. 13 at p. 3 to Hearn Aff. at ¶ 14 (Docket No. 82, Att. 13) (capitalization in original). The second "warning" is located in a Waterous operation manual, titled "November 1995 Discharge Relief Valve Operation and Maintenance Instructions," which reads:

> **WARNING**
> Always reduce pressure with engine throttle to ensure the relief valve is closed before turning the four way valve OFF.

*See* Ex. 14 at p. 7 to Schimaneck Decl. at ¶ 16 (Docket No. 63, Att. 18); *see also* Ex. 2 at p. 7 to Hearn Aff. at ¶ 2 (Docket No. 82, Att. 2) (emphasis in original).[2]

---

[2] In 2006, this warning was amended to include the following language: "**Pressure Hazard. May result in personal injury.**" *See* Ex. 3 to Hearn Aff. at ¶ 3 (Docket No. 82, Att. 3) (emphasis in original).

**MEMORANDUM DECISION AND ORDER - 7**

Pierce contends that Blumhorst performed the hose testing in violation of both warnings when he turned the pressure relief valve off without first throttling down. *See* Def.'s Mem. in Supp. of MSJ, pp. 7-8 (Docket No. 63, Att. 1) ("When Plaintiff turned the relief valve to off, it was an improper procedure. It let all the potential pressure in the pump go into the hoses, which caused a water hammer. The water hammer blew the hose apart.").[3] Implicitly then, Pierce contends that, had Blumhorst followed the warnings, his injuries would not have happened which, in essence, validates the warnings provided.

In response, Blumhorst offers two interrelated retorts. First, as to the warning on the Waterous Pump panel, Blumhorst claims that its language is more instruction than warning. *See* Blumhorst Aff. at ¶ 8 (Docket No. 81) ("There was no warning on the pressure relief controls on the control panel or anywhere near the instantaneous on/off switch that warned of any danger of personal injury associated with the operation of the switch."). Indeed, the term "warning" is not used therein and, further, there is no cautionary language outlining the potential bodily harm that may befall a firefighter who fails to follow its direction. Second, Blumhorst argues that the warnings contained in Waterous's 1995 and 2006 operation manuals are immaterial because they were never made known to him, and whose responsibility it may have been for doing so is a question of fact for the jury to resolve. *See* Pl.'s Opp. to MSJ, pp. 15-16 (Docket No. 79) ("Blumhorst did not read the warnings contained in the Waterous manuals because he was not aware of their existence. . . . There is at least a question of fact as to whether the Fire Department or Pierce is responsible for the undisputed fact that the Waterous manuals containing

---

[3] The Court understands from all of this that the resultant pressure spike is alleged to have caused or contributed to the wye valve's malfunction, thus resulting in Blumhorst's injuries.

**MEMORANDUM DECISION AND ORDER - 8**

the warnings were never provided to pump operators like Blumhorst."). Because these warnings were never made available to him, Blumhorst further argues that they cannot be read to buttress the already-lacking warning/instruction that exists on the Waterous Pump panel. *See id*. at p. 3 ("The issue of the adequacy of those instructions on the truck itself should not be affected by warnings contained in the Waterous manuals.").

In the Court's mind, it cannot be said as a matter of law that the language on the Waterous Pump panel warns a user of the dangerous consequences of turning the relief valve off before reducing pressure, particularly when drawing all favorable inferences in favor of Blumhorst. Simply put, this is for the jury to decide. The effect of the warnings contained in the Waterous manuals, however, is more problematic because such warnings were created by Waterous (not Pierce) and that Pierce's duty to ensure that such warnings reached end users like Blumhorst, if any, is unknown at this point in the litigation. Suffice it to say, based upon the record now before this Court, additional disputes of material fact exist at least as to (1) whether Pierce, as a fire truck manufacturer, had such a duty to warn and, if so, the boundaries of, and whether Pierce satisfactorily met said duty; and (2) whether the warnings contained in the Waterous manuals were adequate[4] and, if so, their effect, if any, when read in conjunction with the instruction/warning on the Waterous Pump panel. These disputes are to be resolved by the

---

[4] It is unclear whether Blumhorst concedes that the warnings contained in the Waterous manuals are adequate. *Compare* Pl.'s Opp. to MSJ, p. 16 (Docket No. 79) ("Blumhorst is not claiming that the warnings in the manuals he never read were inadequate . . . .") *with id*. at 16 ("The fact that Waterous may have included less inadequate warnings in its manuals cannot provide Pierce with any defense . . . ."). This Memorandum Decision and Order does not resolve the question one way or the other.

**MEMORANDUM DECISION AND ORDER - 9**

jury, not this Court on the record as it currently sits.  Pierce's Motion for Summary Judgment is therefore denied in this respect.[5]

D.     **The Firefighter's Rule Does Not Apply to Preclude Blumhorst's Claims Against Pierce**

In Idaho, the firefighter's rule "provides that neither a fireman nor a policeman may recover in tort when his injuries are caused by the same conduct that required his official presence."  *Winn v. Frasher*, 777 P.2d 722, 723 (Idaho 1989).  With this rule in mind, Pierce argues that Blumhorst's injuries were caused while performing his official duties – in this case, pressure-testing the fire trucks' hoses – and, therefore, the firefighter's rule precludes any corresponding recovery in tort.  *See* Def.'s Supp'l Mem. in Supp. of MSJ, pp. 3-4 (Docket No. 67) ("To the extent that a defective Waterous [P]ump caused [P]laintiff's accident, with Pierce denies, his injury arose directly from the work he was sent to do using the Waterous [P]ump.  Since he was injured by the very instrumentality he was using to perform his assigned task, his lawsuit is barred by the firefighter's rule.").

In *Winn*, the Idaho Supreme Court relied heavily on a Michigan Supreme Court decision in evaluating the public policy considerations behind its adoption of the firefighter's rule:

> The policy arguments for adopting a fireman's rule stem from the nature of the service provided by firefighters and police officers, as well as the relationship between these safety officers and the public they are employed to protect.
>
> It is beyond peradventure that the maintenance of organized society requires the presence and protection of fire fighters and police officers.  The fact is that situations requiring their presence are as

---

[5] In light of the questions surrounding the adequacy of the warnings involved here, Pierce's related arguments speaking to Blumhorst's alleged misuse of the Waterous Pump cannot be resolved here as a matter of law.

**MEMORANDUM DECISION AND ORDER - 10**

> inevitable as anything in life can be. It is apparent that these officers are employed for the benefit of society in general, and for people involved in circumstances requiring their presence in particular.
>
> The public hires, trains, and compensates firefighters and police officers to deal with dangerous, but inevitable situations. Usually, especially with fires, negligence causes the occasion for the safety offer's presence.
>
> The very nature of police work and fire fighting is to confront danger. The purpose of these professions is to protect the public. It is this relationship between police officers, firefighters, and society which distinguishes safety officers from other employees. Thus, safety officers are not "second-class citizens," but, rather, are "different" than other employees.

*See Winn*, 777 P.2d at 725 (quoting *Kreski v. Modern Wholesale Elec. Supply*, 415 N.W.2d 178, 186-87 (Mich. 1987)). In other words, for public policy reasons, the firefighter's rule precludes negligence actions when it is the alleged negligence that requires the firefighter's attendance. For example, a firefighter cannot sue the homeowner who negligently causes a fire when that fire injured the firefighter. Such a standard makes sense when understanding the very nature of safety officers' duties – to respond to emergencies frequently occasioned by another's negligence. However, a products liability action, like the one Blumhorst brings here, presents a very different set of circumstances that do not neatly align with the public policy considerations of the firefighter's rule

      In this case, Blumhorst was neither responding to an emergency situation brought about by an allegedly negligent act when he was injured, nor actually injured as a result of any such emergency. Had that been the case, the firefighter's rule would likely apply. Instead, Blumhorst was simply testing a fire truck's hose when the wye valve broke away from the fire truck and injured him. There was no precedent negligent event that blossomed into an emergency

**MEMORANDUM DECISION AND ORDER - 11**

requiring Blumhorst's presence and, thus, no underlying emergency directly contributing to Blumhorst's injuries.

Moreover, Pierce's arguments in favor of applying the firefighter's rule to Blumhorst's tort claims would essentially mean that *any and all* injuries taking place while a firefighter is performing his or her work duties – regardless of whether the firefighter is actually fighting a fire or not – would be unrecoverable in tort against a negligent party. For instance, under Pierce's application of the firefighter's rule, a firefighter would not be able to recover for injuries resulting from a defective shield, faulty helmet, or malfunctioning oxygen mask. Public policy is not served by applying the firefighter's rule in this way and, accordingly, the Court is not prepared to make such a sweeping finding here.

There is no question that, thankfully, firefighters (and other safety officers) have agreed to expose themselves to certain risks inherent within their work. However, those risks do not include the prospect of injury owing to dangerously defective equipment as is alleged to be the case here. Claims premised upon a products liability theory are, at least upon the facts of this case, beyond the reach of the firefighter's rule. *See, e.g.*, *Winn*, 777 P.2d at 728 (Huntley, J., concurring) ("In light of the strong public policy favoring recovery in products liability cases, the foreseeability of harm to the plaintiffs, and the generally harsh results of allowing a total defense, the court should not extend the fire[fighter's] rule to bar recovery against the manufacturer chain."); *McKernan ex rel. McKernan v. General Motors Corp.*, 3 P.3d 1261, 1267 (Kan. 2000) ("Allowing products liability claims against parties whose negligence did not create the need for the firefighter at the scene does not frustrate the public policy basis of the firefighter's rule . . ., but rather promotes the public policy of fixing responsibility for defective

**MEMORANDUM DECISION AND ORDER - 12**

products on the party who introduces the product to the market place."); *Shepard v. Morning Pride Mfg., Inc.*, 636 N.Y.S.2d 173, 175 (N.Y. App. Div. 1996) ("To absolve the manufacturer of defective safety equipment from liability simply because the end user happens to be a firefighter serves none of the policy reasons behind the rule and, in fact, would have the effect of providing unscrupulous businesses with a permanent "open season" on firefighters."). Pierce's Motion for Summary Judgment is therefore denied in this respect.

### III. ORDER

Based on the foregoing, IT IS HEREBY ORDERED THAT Defendant Pierce Manufacturing, Inc.'s Motion for Summary Judgment (Docket No. 63) is DENIED.

DATED: **December 18, 2012**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 13**