UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERVIN E. BLUMHORST,<br><br>Plaintiff,<br><br>v.<br><br>PIERCE MANUFACTURING, INC., a Wisconsin corporation, AKRON BRASS COMPANY, a Delaware corporation, and john Does I through X,<br><br>Defendants. | Case No. 4:10-cv-00573-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL**<br><br>**(Docket No. 255)** |
| PIERCE MANUFACTURING, INC., a Wisconsin corporation,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>WATEROUS COMPANY, a Minnesota corporation<br><br>Third-Party Defendant. | |

Currently pending before the Court is Plaintiff's Motion for Judgment as a Matter of Law and for a New Trial (Docket No. 255). Having carefully considered the record, heard oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND

On September 30, 2008, Plaintiff Ervin E. Blumhorst ("Blumhorst"), a firefighter, was injured by a "wye" valve that apparently broke away from a fire truck. The fire truck was

designed and manufactured by Defendant Pierce Manufacturing, Inc. ("Pierce"), while the wye valve itself was manufactured by Defendant Akron Brass ("Akron"). Blumhorst alleged that "the dangerous and defective condition and design of the [f]ire [t]ruck and/or the [w]ye [v]alve" caused him to "suffer[ ] severe and permanent personal injuries, including . . . sever[e] trauma and pain, an injury to his head, and a left knee multi-ligament injury." Pl.'s Compl. ¶ 7 (Docket No. 1, Att. 3). Specifically, Blumhorst claimed that (1) the fire truck and wye valve were defective, (2) Pierce and Akron failed to adequately warn of the dangerous properties and design of the fire truck and wye valve, and (3) Pierce and Akron failed to equip the fire truck with safety devices or take reasonable safety precautions to prevent foreseeable injuries. *See id*. at ¶¶ 9(a)-9(d). In turn, Plaintiff originally asserted negligence, breach of warranty, and strict products liability causes of action against both Pierce and Akron. *See id*. at ¶¶ 8-14.[1, 2]

Eventually, Blumhorst's claims evolved into two separate and distinct legal theories of recovery against Pierce (strict products liability and negligence), with Blumhorst alleging that

---

[1] Pierce then filed a Third-Party Complaint against Waterous Company ("Waterous") for implied indemnity, contribution, and declaratory relief. *See* Pierce's Third Party Compl., ¶¶ 1-17 (Docket No. 46). Waterous manufactured the pump assembly (including discharge relief valve) and control panel installed on the fire truck. *See id*. at ¶ 2.

[2] Before trial, Akron was dismissed from the action by stipulation. *See* Stip. of Dismissal (Docket No. 120); Order of Dismissal (Docket No. 121). Additionally, the undersigned bifurcated Pierce's claims against Waterous, while still permitting Pierce to argue that "the discharge relief valve and control panel . . . , including all associated instructions and warnings created by Waterous, were not negligently manufactured by Waterous, or otherwise not unreasonably dangerous or defective because of negligent manufacture." *See* Order, pp. 6-7 (Docket No. 188) ("[T]he Court is not persuaded that there is an actual case or controversy at issue between Pierce and Waterous, and the Court is concerned that to allow Waterous to participate at trial in defending against Plaintiffs' claims directed solely against Pierce will unduly and unfairly shift the adversarial balance. Accordingly, the trial will be bifurcated, such that Pierce's indemnity and contribution claims against Waterous will be heard and resolved in a separate proceeding from Plaintiff's claims against Pierce.").

his injuries were caused by defects in Pierce's fire truck (loosely defined to include the fire truck's pump and other component parts) and/or because Pierce failed to adequately warn of a hazard involved in the foreseeable use of the pump.

Following a seven-day trial, the jury returned a special verdict on February 27, 2013, finding, in relevant part, that (1) Pierce was not strictly liable; (2) Pierce did not negligently design the fire truck; (3) Pierce negligently failed to give adequate warnings related to the fire truck, but (4) nonetheless proved its "Government Contractor" defense regarding Blumhorst's failure to warn claim; and (5) Akron Brass was also negligent. *See* Special Verdict Form, pp. 1-3 (Docket No. 247). A Judgment on Jury Verdict followed, ordering "that [Blumhorst] take nothing and judgment [be] hereby entered for [Pierce] together with costs as allowed by law." J. on Jury Verdict (Docket No. 248).

Through the at-issue Motion, Blumhorst argues that the jury's verdict is "irreconcilably inconsistent" and that he is entitled to a judgment as a matter of law because (1) "Pierce['s] fire truck was defective as a matter of law because of inadequate warnings of the hazards associated with its operation"; (2) "Pierce was negligent as a matter of law for failing to provide adequate warnings"; (3) "the Government Contractor defense does not immunize Pierce from liability on either the strict liability claim or on the negligence claim"; and (4) "Pierce did not carry its burden to establish that Akron . . . negligently manufactured the wye valve and that such negligence caused [his] injuries and damages." Mem. in Supp. of Mot. for J. and/or New Trial, p. 15 (Docket No. 255, Att. 1). Alternatively, Blumhorst seeks a new trial for related reasons. *See id*. ("A new trial should be granted because the special verdict . . . was against the clear weight of the evidence. The special verdict . . . is irreconcilably inconsistent under any possible

application of the evidence and instructions. Based upon the clear weight of the evidence, the Government Contractor defense does not provide Pierce immunity from its failure to warn of known dangers or if its continuing duty to warn of dangers associated with the use of the Pierce fire truck. The clear weight of the evidence establishes that Pierce did not carry its burden of showing that the Akron Brass wye valve was negligently manufactured.”).

## II. DISCUSSION

### A. Legal Standards

#### 1. Rule 50(b): Motion for Judgment as a Matter of Law

Renewed motions for judgment as a matter of law are made pursuant to Rule 50(b), which states:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court’s later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment – or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged – the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> (1) allow judgment on the verdict, if the jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b)(1)-(3).

In reviewing a renewed motion for judgment as a matter of law under FRCP 50(b), courts “may not make credibility determinations or weigh the evidence,” but “‘must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party’s favor.’” *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (internal

quotations and citations omitted). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id*. (internal quotations and citation omitted). The court must review the jury's verdict for substantial evidence and uphold it if "evidence adequate to support the jury's conclusion [exists], even if it is also possible to draw a contrary conclusion." *Id*. at 961, 963 (internal quotations and citation omitted).

A Rule 50(b) motion for judgment as a matter of law is not a freestanding motion; rather, it is a *renewed* Rule 50(a) motion. *See id*. at 961. "[U]nder Rule 50, a party must make a Rule 50(a) motion for judgment as a matter of law before a case is submitted to a jury" and, "[i]f the judge denies or defers ruling on the motion, and the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b)." *Id*. "Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." *Id*. "Thus, a party cannot properly raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Id*; *see also Tortu v. Las Vegas Metro. Police Dept.*, 556 F.3d 1075, 1083 (9th Cir. 2009) ("This failure to file a Rule 50(a) motion precludes consideration of a Rule 50(b) motion for judgment as a matter of law. We hold that the district court should not have considered [the] Rule 50(b) motion because it was procedurally foreclosed by [the] failure to file a Rule 50(a) motion."); Fed. R. Civ. P. 50(b) Adv. Comm. Notes 1991 ("A post[-]trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."); Fed. R. Civ. P. 50(b) Adv. Comm. Notes 2006 ("Because the Rule 50(b) motion is only a renewal of the pre[-]verdict motion, it can be granted only on grounds advanced in the pre[-]verdict motion.").

"However, Rule 50(b) may be satisfied by an ambiguous or inartfully made motion under Rule 50(a);" otherwise, "the rule is a harsh one." *Go Daddy*, 581 F.3d at 961 (internal quotations and citation omitted).

2. Rule 59: Motion for New Trial

Even where the court findings that a renewed motion for judgment as a matter of law is not appropriate, it may order a new trial under Rule 59, which states:

> The court may, on motion, grant a new trial on all or some of the issues – and to any party – as follows:
>
> (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or
>
> (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

Fed. R. Civ. P. 59(a)(1)(A) & (B). "Rule 59 does not specify the grounds on which a motion for a new trial may be granted." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotations and citation omitted). "Rather, the court is bound by those grounds that have been historically recognized." *Id*. "Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Id*. (internal quotations and citation omitted).

The Ninth Circuit has held that a new trial may be granted "only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id*. (internal quotations and citation omitted). In contrast to a motion for judgment as a matter of law under Rule 50, in determining whether a verdict is contrary to the

clear weight of the evidence under Rule 59, the court "has the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Id*. (internal quotations and citations omitted); *see also Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987) ("If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial. . . . . Doubts about the correctness of the verdict are not sufficient grounds for a new trial: the trial court must have a firm conviction that the jury has made a mistake.") (internal quotations and citation omitted); *U.S. v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (". . . a district court may not grant a new trial merely because it would have arrived at a different verdict.").

The determination of "the clear weight of the evidence" is a fact-specific endeavor, and there must only be some "reasonable basis" for the jury's verdict. *Id*. (citations omitted). "Although the court's ruling on an alternative motion for a new trial involves the exercise of some discretion, a stringent standard applies when the motion is based on insufficiency of the evidence." *E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997). To wit, "the absolute absence of evidence to support the jury's verdict makes [refusal to grant a new trial] an error in law." *Molski*, 481 F.3d at 729-30 (internal quotations and citations omitted).

**B. Analysis**

1. Blumhorst is Not Entitled to a Judgment as a Matter of Law Under Rule 50(b)

Presented orally at the close of Pierce's case-in-chief on February 26, 2013, Blumhorst made a Rule 50(a) motion, arguing:

> Okay. Yes, Your Honor. At the close of the evidence, Plaintiff moved for a directed verdict that the City has sovereign immunity for strict liability claims under *Vogel Paint*, the Ninth Circuit; that the City has discretionary immunity for the failure to enact any NFPA or the timing of enacting an SOG consistent with the NFPA.
>
> The Plaintiff moves to strike the mitigate defense as there is no evidence in the record that Blumhorst failed to mitigate his injuries after September 30, 2008. There is a move for summary judgment – for a directed verdict that there is no evidence in the record that Akron Brass negligently manufactured the wye valve or its useful safe life has not ended and certainly not clear and convincing evidence of that and move for directed verdict that Pierce is responsible for any negligent design of – by Waterous to the Plaintiff. Thank you, Your Honor.

2/26/13 Tr., p. 4 (Docket No. 256); *see also* 2/26/13 Minute Entry (Docket No. 240). In turn, following Pierce's counsel's response to these arguments, the undersigned issued the following ruling from the bench:

> All right. The Court has before it Plaintiff's oral motion under Rule 50([a]) seeking a directed verdict on four discrete issues based upon the evidence that's come in at trial.
>
> The issue of the immunity for the City, in this context as argued by counsel and the Court's further understanding from the nature of the jury instruction discussions that the Court had off the record prior to having this argument is that Plaintiff would seek to preclude argument that the city has comparative fault in this case based upon a theory that ties the question to whether or not the City would have liability if sued directly for its conduct.
>
> Under the Court's understanding of the law that would apply to that, that goes too far. That the City's conduct can be compared for purposes of determining Pierce's fault in this case and similarly comparing it with Plaintiff's fault and other third parties but it's not well taken. If I find something that makes me think otherwise tonight, I'll let you know but right now, denied.
>
> The motion to strike the mitigation defense is conceded. The Court will grant the Rule 50([a]) motion on that issue.

> The Akron Brass, the Court is satisfied that there is evidence in the record that would support an argument that Akron Brass bears comparative fault and it's certainly evidence that can be argued very strongly on either side of that issue. The jury will have that as well as the issue about responsibility for negligent design. That's a contested issue that the evidence is in – there's conflicting evidence in the record. It's not – the record's not such that the jury could only find one reasonable answer to that question. So the Court will deny it. Deny those latter two issues as well.
>
> All right counsel. We'll get to work. Thank you and we'll see you in the morning.

2/26/13 Tr., pp. 6-7 (Docket No. 256); *see also* 2/26/13 Minute Entry (Docket No. 240).

Therefore, Blumhorst's Rule 50(a) Motion spoke only to the following issues: (1) the fire department's alleged sovereign immunity; (2) Pierce's failure to mitigate defense; (3) Akron's alleged negligence; and (4) Pierce's alleged responsibility for any negligent design by Waterous. Pierce now argues that Blumhorst's ensuing Rule 50(b) Motion is improper (except as to the issue involving Akron) because it raises new grounds. *See* Opp. to Mot. For J. and/or New Trial, p. 1 (Docket No. 258) ("Plaintiff's Motion for Judgment as a Matter of Law under Rule 50(b) *renews* his arguments solely as his contentions regarding Akron [ ]. This is the *only* ground which should be considered by this Court. His other arguments should be denied for this reason alone.") (emphasis in original).

In an effort to overcome the procedural obstacle now represented by the need for his current Rule 50(b) Motion to parallel his earlier rule 50(a) Motion, Blumhorst counters that his oral Rule 50(a) Motion – though perhaps "ambiguous or inartfully made" – is enough. Specifically, Blumhorst contends that, "[t]o have found Pierce as the manufacturer of the fire truck liable for the negligence of Waterous as the manufacturer of a component part of that Pierce fire truck as argued by Blumhorst *pre-verdict*, would have required this Court to reject

Pierce's government contract defense."  Reply in Supp. of Mot. for J. and/or New Trial, p. 3 (Docket No. 260) (citing *Go Daddy*, 581 F.3d at 961).  Moreover, Blumhorst submits that his pre-verdict objections to Pierce's proposed jury instruction concerning the government contractor defense constitutes a sufficient approximation of a Rule 50(a) motion to satisfy the requirements of Rule 50(b).  *See id*. at pp. 3-4.  The Court disagrees.

First, Blumhorst's oral Rule 50(a) Motion asked the Court to find Pierce responsible for any negligent design by Waterous – in essence, Waterous' negligent design, if any, constitutes Pierce's negligent design.  While it might be possible to tweak and massage such an argument to somehow implicate the  government contractor defense's application to Blumhorst's claims against Pierce (so as to now connect it to Blumhorst's Rule 50(b) Motion), that is not necessarily the case – at least not for the same reasons now argued within Blumhorst's Rule 50(b) Motion.  In other words, Blumhorst asks this Court, after-the-fact, to read way too much into what has thus far been a single sentence's worth of argument relayed during his oral Rule 50(a) Motion.  Put simply, Blumhorst's otherwise capable attempt at fitting the proverbial square peg in a round hole just asks this Court to go too far.  Whatever safety net might exist via *Go Daddy's* reference to an "ambiguous" or "inartfully made" Rule 50(a) motion generally, does not apply to revive Blumhorst's actual Rule 50(a) Motion here.

Second, even though Blumhorst claims that he "strenuously and repeatedly objected" to Pierce's proposed jury instructions on the government contractor defense, he points to no instances in the record where that is actually the case.  Still, as Blumhorst suggests, the Court *does* recall the fact that objections were made.  However, the fact that objections were made, without more, is not enough.  Instead, to operate in the place of a Rule 50(a) Motion,

Blumhorst's objections to Pierce's jury instructions must speak to the particular bases for relief that finally wound up in his Rule 50(b) Motion. *See, e.g.*, Fed. R. Civ. P. 50(b) Adv. Comm. Notes 2006 (discussing purpose of Rule 50(a) motion: "The earlier motion informs the opposing party of the challenge to the sufficiency of the evidence and affords a clear opportunity to provide additional evidence that may be available. The earlier motion also alerts the court to the opportunity to simplify the trial by resolving some issues, or even all issues, without submissions to the jury."). This did not happen here. For instance, Blumhorst's written objection to Pierce's proposed instruction on the its government contractor defense simply states: "Blumhorst objects to Pierce's Instruction No. 17 as it is not an accurate statement of Idaho law and there are no factual issues regarding this defense to be decided by the jury." Blumhorst Not. of Obj.'s and Non-Obj.'s to Def.'s J.I., p. 5 (Docket No. 239).[3] Although certainly an objection, it falls short of raising (or even implying) the arguments presented in Blumhorst's Rule 50(b) Motion. Blumhorst's subsequently-stated objection on the record[4] is lacking as well, as it seemed to more-or-less accept a government contractor defense jury instruction, but took issue with such an instruction's breadth – namely flushing out the entity that prepared the plans and specifications

---

[3] Blumhorst did not submit his own proposed jury instruction on the government contractor defense. *See* Pl.'s Proposed J.I. (Docket No. 225, Att. 1). There is no surprise in that, given his position that such a defense should not have been available to Pierce as a matter of law.

[4] From 1:45 p.m. to 3:30 p.m. on February 26, 2013, the Court held an "Informal Jury Instruction Conference" with counsel. *See* 2/26/13 Minute Entry (Docket No. 240). This Conference was *not* on the record. The next morning, at 8:30 a.m., the Court held a "Jury Instruction Conference" with counsel before closing arguments. *See* 2/27/13 Minute Entry (Docket No. 241). This Conference *was* on the record and, at that time, Blumhorst's counsel offered the objection considered in this Memorandum Decision and Order. Later that day, the parties had an opportunity to make a full record of their objections on the record following closing arguments, after the case was submitted to the jury. *See* 2/27/13 Minute Entry (Docket No. 241). During that later session, Blumhorst's counsel did not seem to make a formal objection to the government contractor defense, but again argued that Pierce be responsible for the design of the fire truck's pump assembly and/or Waterous' negligent design – the same argument raised in its oral Rule 50(a) Motion. *See supra*.

for the fire truck such that, absent that role, there can be no liability.[5] In the Court's mind, these objections do not set the stage (as a replacement for, or to supplement, Blumhorst's Rule 50(a) Motion) for Blumhorst's Rule 50(b) Motion – particularly when Blumhorst offers no evidence in the record to support his argument beyond pointing out the fact that he objected to Pierce's government contractor defense. Again, this is not enough; more is needed.

Third, and perhaps most importantly, when considering the evidence in the light most favorable to Pierce – as this Court is obligated to do under Rule 50(b) (*see supra*) – Blumhorst's Rule 50(b) Motion cannot prevail. Leading up to this point, questions of fact existed to preclude Pierce's Motion for Summary Judgment (Docket No. 63), Pierce's Motion for Directed Verdict (Docket No. 234), and Blumhorst's Motion for Directed Verdict (Docket No. 240). Ultimately, the evidence offered up to and during trial was not so conclusive (one way or the other) as to warrant taking the case away from the jury. However, in this setting, those factual issues and their surrounding evidence must now be construed in Pierce's favor under Rule 50(b) – even when setting aside any shortcomings in Blumhorst's original Rule 50(a) Motion as already discussed. After viewing Blumhorst's arguments through such a post-trial pro-Pierce lens, Blumhorst is not entitled to a judgment as a matter of law under Rule 50(b).[6]

---

[5] The undersigned understood that the point of such an objection was to argue that the plans and specifications were not prepared by the Bonneville Fire District. However this was a matter to be resolved by the jury, given the underlying factual subtleties, evidence, and arguments relating thereto that existed throughout the trial. *See also infra*.

[6] This includes Blumhorst's argument vis à vis Akron (which *was* adequately raised in Blumhorst's Rule 50(a) Motion). First, in ruling on Blumhorst's oral Rule 50(a) Motion, the undersigned was satisfied that certain evidence could be construed by the jury to support an argument that Akron was responsible for Blumhorst's injuries. *See supra*. But, the undersigned is now obligated to construe that evidence in Pierce's favor, cutting against Blumhorst's cause. Second, practically speaking, Akron's liability is not relevant to the jury's verdict, given the jury's consideration and resolution of other issues; to be sure, the jury should not have even – but mistakenly – addressed Akron's comparative fault. *See infra*.

2. Blumhorst is Entitled to a New Trial Under Rule 59

Preliminarily, having combined his Motion for Judgment as a Matter of Law with his Motion for a New Trial, the scope of the latter requires more effort to discern. That is, even while Blumhorst's underlying Motion lists seven discrete bases for *both* his Motion for Judgment as a Matter of Law and Motion for a New Trial, his supporting Memorandum seems to make *unique* arguments for each such motion. *Compare* Mot. for J. and/or New Trial, p. 15 (Docket No. 255), *with* Mem. in Supp. of Mot. for J. and/or New Trial, p. 15 (Docket No. 255, Att. 1).

For example, Blumhorst's Memorandum contains a heading labeled "Argument" where Blumhorst raises issues regarding (1) the jury's alleged inconsistent findings relating to strict liability and negligence, (2) whether Pierce followed plans and specifications to support the government contractor defense, (3) whether a third-party prepared the plans and specifications to support the government contractor defense, and (4) the jury's alleged inconsistent findings relating to negligence and the government contractor defense. *See* Mem. in Supp. of Mot. for J. and/or New Trial, pp. 3-8 (Docket No. 255, Att. 1). Read together, these arguments appear to be presented as justification for Blumhorst's requested judgment as a matter of law.

Later, after intervening argument sections labeled "Government Contractor Defense"[7] and "Akron Brass,"[8] Blumhorst's Memorandum contains a *separate* heading labeled "Motion for

[7] Within this heading, Blumhorst argues that he is "renew[ing] his judgment as a matter of law" that the government contractor defense does not apply because the fire department did not participate in the design of the pump assembly and that Pierce separately engaged in tortious conduct. *See* Mem. in Supp. of Mot. for J. and/or New Trial, pp. 8-12 (Docket No. 255, Att. 1).

[8] Within this heading, Blumhorst argues that he "is entitled to judgment in his favor as a matter of law" because Pierce presented no evidence that Akron was negligent or that Akron's

New Trial" *See id*. at pp. 8-12. Therein, Blumhorst primarily argues that the jury's negligence determination was "irreconcilably inconsistent" with its simultaneous finding that the government contractor defense applied. *See id*. at p. 14. Then, but almost in passing, Blumhorst immediately goes on to state in conclusory fashion that the "clear weight of the evidence" establishes that (1) "the jury verdict was irreconcilably inconsistent relating to its determination that the fire truck was not defective because of the failure to adequately warn Blumhorst of a hazard involved in the foreseeable use of the product"; (2) "the jury verdict was irreconcilably inconsistent relating to the determination that the government contractor defense immunized Pierce from any liability for Blumhorst's injuries and damages"; and (3) "Pierce did not carry its burden to establish Akron . . . negligently manufactured the wye valve and that the negligence caused Blumhorst's injuries and damages." Mem. in Supp. of Mot. for J. and/or New Trial, pp. 14-15 (Docket No. 255, Att. 1).[9] Read together, these arguments appear to be presented as justification for Blumhorst's requested new trial.

At the end, Blumhorst's Memorandum concludes with the following delineation of arguments relative to his Motion for Judgment as a Matter of Law and Motion for a New Trial:

> Blumhorst is entitled to a judgment as a matter of law because the verdict is irreconcilably inconsistent. This Court should determine that the Pierce fire truck was defective as a matter of law because of

---

valve was defective. *See* Mem. in Supp. of Mot. for J. and/or New Trial, p. 12 (Docket No. 255, Att. 1).

[9] Blumhorst also states in the very next sentence: "In addition erroneous evidentiary rulings allowing questioning about the allegations in Pierce's Complaint related to the Akron Brass wye valve but not allowing questioning about allegations in Pierce's Third Party Complaint against Waterous substantially prejudiced Blumhorst." Mem. in Supp. of Mot. for J. and/or New Trial, p. 15 (Docket No. 255, Att. 1); *see also id*. at p. 12 (verbatim argument presented under "Akron Brass" heading, before "Motion for New Trial" heading (*see supra*)). Blumhorst offers no substantive argument on this point, beyond simply concluding that he was prejudiced.

> inadequate warnings of the hazards associated with its operation. Pierce was negligent as a matter of law for failing to provide adequate warning. Blumhorst is also entitled to a judgment as a matter of law because the Government Contractor defense does not immunize Pierce from liability on either the strict liability claim or on the negligence claim. Blumhorst is also entitled to a judgment as a matter of law in that Pierce did not carry its burden to establish that Akron Brass negligently manufactured the wye valve and that such negligence caused Blumhorst's injuries and damages.
>
> A new trial should be granted because the special verdict against Blumhorst was against the clear weight of the evidence. The special verdict against Blumhorst is irreconcilably inconsistent under any possible application of the evidence and instructions. Based upon the clear weight of the evidence, the Government Contractor defense does not provide Pierce immunity from its failure to warn of known dangers or of its continuing duty to warn of dangers associated with the use of the Pierce fire truck. The clear weight of the evidence establishes that Pierce did not carry its burden of showing that the Akron Brass wye valve was negligently manufactured.

*Id*. at pp. 15-16.

Thereafter, responding to Pierce's opposition to his Motion for Judgment as a Matter of Law and Motion for a New Trial, Blumhorst's Reply in support of these motions contains the same diffuse approach to his overall arguments for relief. On the one hand, Blumhorst hints at moving away from any claim that a new trial is warranted by virtue of the jury's alleged inconsistent verdicts. *See, e.g.*, Reply in Supp. of Mot. for J. and/or New Trial, p. 4 (Docket No. 260) ("'Unlike inconsistent verdict findings, no objection is required when the grounds for a new trial are that the verdict is against the weight of the evidence or that the finding represents a miscarriage of justice.'") (quoting *Mitri v. Walgreen Co., Inc.*, 2011 WL 5118452, *12 (E.D. Cal. 2011)).[10] On the other hand, Blumhorst repeats his arguments that (1) the jury's negligence

---

[10] In fairness, Blumhorst may have simply been responding to Pierce's position that his Rule 59 arguments were waived by not objecting to the verdict before the jury's discharge – in

finding cannot be squared with it finding that the general contractor defense immunized Pierce, and (2) the jury's negligence finding cannot be squared with its finding of no strict liability – i.e., both findings are inconsistent. *See id*. at pp. 6-10.

The point of all this is not to critique Blumhorst's arguments before they begin or to pigeonhole them in any way; it is to demonstrate the difficulty in fully grasping their nature, extent, or nuances – for instance, which arguments apply to his Motion for Judgment as a Matter of Law and which ones apply to his Motion for a New Trial (or both)?  This lawsuit's many moving parts, challenging legal concepts, and multi-part special verdict unquestionably contribute to the challenge.  But, in any event, the Court does discern from a careful review of Blumhorst's briefing in support of his Motion for a New Trial that the overall thrust of his arguments on this discrete point are: (1) the jury should have found Pierce strictly liable (but did not) when considering the jury's determination that Pierce was liable for negligence (failure to warn); (2) the jury should not have found the government contractor defense to apply (but did) when considering the jury's determination that Pierce was liable for negligence (failure to warn); and (3) the jury should not have found Akron negligent (but did) based upon the clear weight of the evidence.  That Blumhorst makes additional arguments challenging the defense verdict in also moving for a judgment as a matter of law is beside the point.  Such arguments have already been addressed and set aside under Rule 50(b) (*see supra*), and are extraneous to the above-referenced arguments supporting Blumhorst's alternate request for a new trial under Rule 59, considered below.

---

essence, arguing that, even if that was the case (which Blumhorst denies (*see infra*)), his efforts at securing a new trial are additionally/alternately premised upon arguments that the jury's verdict represents a miscarriage of justice.

*a. Strict Liability and Negligence (Failure to Warn)*

Looking, in part, to the jury instructions on (1) the definition of "product" (Instruction No. 26), (2) the definition of "defective" (Instruction No. 29), (3) strict liability (Instruction No. 30), and (4) negligence (failure to warn) (Instruction Nos. 32 & 33), Blumhorst argues that the jury's decision that Pierce was negligent in failing to give adequate warnings related to the product/fire truck conflicts with the same jury's finding that the product was not in a defective condition when it left Pierce's control. In other words, Blumhorst contends that the jury's findings as to strict liability and negligence (failure to warn) are inconsistent. *See* Mem. in Supp. of Mot. for J. and/or New Trial, p. 4 (Docket No. 255, Att. 1) ("[B]ecause the jury did find that Pierce was negligent in failing to give adequate warnings, which negligence was a proximate cause of the injuries to Blumhorst [ ], the product must have been in a defective condition when it left the control of Pierce and that defective condition must have been a proximate cause of injuries to Blumhorst."); *see also id*. at p. 14; Reply in supp. of Mot. for J. and/or new Trial, pp. 9-10 (Docket No. 260).[11] According to Blumhorst, because a product may be defective due to a failure to adequately warn, and because the jury found that Pierce was negligent in failing to

[11] Pierce's argument that Blumhorst waived any claims that the verdict was inconsistent by failing to raise them while the jury was still seated is not persuasive. *See* Opp. to Mot. For J. and/or New Trial, pp. 3-5 (Docket No. 258). Such arguments have more traction when dealing with general verdicts. *See Pierce v. Southern Pacific Trans. Co.*, 823 F.2d 1366, 1370 (9th cir. 1987) (a party may object to inconsistent special verdicts under Rule 49(a) even where no objection is raised prior to discharging jury). Here, because the jury's verdict left the Court to determine the ultimate legal result (considering the jury's findings as to Blumhorst's claims and Pierce's defenses), the jury rendered a special verdict – in point of fact, the jury was tasked with filling out a "Special Verdict Form," developed with the assistance of both parties. *See* Special Verdict Form (Docket No. 247); *see also* (Docket Nos. 226 & 227) (both parties submitting proposed "special verdict" forms in similar styles to the Special Verdict Form used by Court at conclusion of trial).

adequately warn users of the fire truck, the fire truck must have been defective when it left Pierce's control under a strict products liability analysis.

While Blumhorst's position is a reasonable argument to make, the Court has a duty to reconcile any arguable incongruity in a jury verdict if there is a reasonable way to do so. *See Floyd v. Laws*, 929 F.2d 1390, 1396 (9th Cir. 1991) ("When confronted with seemingly inconsistent answers to the interrogatories of a special verdict, a court has a duty under the Seventh Amendment to harmonize those answers, if such is possible under a fair reading of them."). This duty involves a "search for a reasonable way to read the verdicts as expressing a coherent view of the case, and . . . [t]he consistency of the jury verdicts must be considered in light of the judge's instructions to the jury." *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1074 (9th Cir. 2005). Thus, the question becomes whether, under Idaho law, it can be consistent for a jury to find Pierce negligent in failing to warn, while at the same time finding the fire truck not defective and Pierce not strictly liable.

The Ninth Circuit considered this issue in *Toner v. Lederle Laboratories*, 828 F.2d 510 (9th Cir. 1987). There, the plaintiff was paralyzed after being vaccinated with Tri-Immunol, a drug manufactured by the defendant. The plaintiff contended that the defendant failed to develop and market Tri-Slogen, an alternative vaccine apparently safer than the one given to the plaintiff. The jury returned a special verdict finding the defendant negligent in connection with the product and that the negligence caused the plaintiff's injuries. The jury also rejected the plaintiff's other theories of strict liability and breach of warranty. The defendant appealed, arguing, *inter alia*, that the jury's special verdicts finding the defendant negligent, but not strictly liable, were inconsistent. *See id*. at 511.

The Ninth Circuit certified questions of law to the Idaho Supreme Court. Based on the answers it received, the Circuit panel found the jury's special verdict answers not inconsistent. *See id*. In particular, the panel interpreted the Idaho Supreme Court's statement that "the focus in negligence is on the manufacturer's conduct, while in strict liability it is on the product and the user's expectations," as allowing the jury to find the defendant negligent, but not strictly liable. *See id*. at 513. From there, the Ninth Circuit determined that, even though a claim for relief action under a strict liability theory may fail, there still exists an "incentive for safe design by the manufacturer that is supplied by the threat of negligence liability." *Id*. The court noted that:

> It is not enough for Lederle to argue that the jury's finding of negligence concludes that Tri-Immunol was defective, while its finding on strict liability states a contrary view. The law and the instructions required the jury to examine the case from two different points of view. *It is reasonable to read the special verdicts as saying that Lederle's failure to develop the Tri-Slogen vaccine was unreasonable conduct, although the danger posed by the product itself was not greater than an ordinary consumer would reasonably expect*.

*Id*. (emphasis added).

In this case, the Court gave jury instructions delineating two distinct causes of action – one for strict liability; the other for negligence. *See* J.I. No. 2 (Docket No. 246) ("Mr. Blumhorst's claims fall within two separate and distinct legal theories of recovery: (1) strict products liability; and (2) negligence by Pierce, the product manufacturer and sell. The strict liability theory focuses on the product itself, while the negligence theory focuses on the conduct of Pierce."); *see also id*. at J.I. Nos. 30, 32, & 33 (outlining instructions for strict liability and

negligence (failure to warn) claims).[12] The instruction regarding Blumhorst's strict liability claim involved the question of whether the fire truck was defective (by exposing a user or bystander to an unreasonable risk of physical injury, or if it is more dangerous than would be expected by an ordinary person who may reasonably be expected to use it); whether the defect existed when the product left Pierce's control; and whether the defect was a proximate cause of Blumhorst's injury. *See id*. at J.I. Nos. 29 & 30. This instruction focused and emphasized on the fire truck and its condition. The instruction regarding negligence involved whether Pierce was negligent in its warnings regarding the fire truck; whether Blumhorst was injured; and whether Pierce's negligence was the proximate cause of Blumhorst's injury. *See id*. at J.I. Nos. 32 & 33. In contrast to the strict liability instruction, this instruction focused not on the fire truck, but on Pierce's conduct. *See Toner*, 828 F.2d at 513.

As the decision in *Toner* describes, a plaintiff may prevail on their negligence claim, but not their strict liability claim, because the jury could reasonably have examined the case from two different points of view and reached its verdict based on the separate foci of the two causes of action. With *Toner* as a backdrop, it is possible to read the jury's special verdict here as saying that the jury found Pierce negligent in failing to adequately warn the fire truck's users at the time of sale, while rejecting the claim that the fire truck itself presented unreasonable risks of physical injury or was more dangerous than would be expected by an ordinary consumer. Because this Court can reconcile the jury's verdicts on Blumhorst's strict liability and negligence claims, Blumhorst's Motion for a New Trial is denied on this ground.

---

[12] Blumhorst (as well as Pierce) also proposed two stand-alone instructions for his strict liability and negligence claims. *See* Pl.'s Proposed J.I. Nos. 16, 30, & 31 (Docket No. 225, Att. 1); *see also* Def.'s Proposed J.I. Nos. 10 & 11 (Docket No. 231).

*b. Negligence (Failure to Warn) and the Government Contractor Defense*

"A public or private contractor following plans and specifications prepared by another party is not liable in negligence where defects in the plans and specifications cause injuries, so long as the contractor should have reasonably known about the defects." *Craig Johnson Const., L.L.C. v. Floyd Town Architects, P.A.*, 134 P.3d 648, 653 (Idaho 2006). This "government contractor" defense "protects the reasonable reliance of the contractor on plans generated by another party, and at the same time respects the general proposition that where there is no fault, there should be no liability, regardless of the character of the parties involved." *Id*. Throughout this case, Pierce argued that the government contractor defense insulated it from liability because it supplied the Bonneville Fire District with a fire truck that met all of the Bonneville Fire District's written specifications. And, while this Court denied Pierce's motion for summary judgment and Rule 50(a) motion on this issue due to questions of fact, the jury ultimately agreed that the government contractor defense applied.

Now, post-trial, looking, in part, to the jury instructions on (1) the definition of "defective" (Instruction No. 29), (2) negligence (failure to warn) (Instruction Nos. 32 & 33), and (3) the government contractor defense (Instruction No. 43), Blumhorst argues that the jury's determination that Pierce was negligent in failing to give adequate warnings related to the product/fire truck is fundamentally at odds with the same jury's finding that the government contractor defense operated to immunize Pierce from that liability. *See* Mem. in Supp. of Mot. for J. and/or New Trial, pp. 12-15 (Docket No. 255, Att. 1). More to the point, Blumhorst points out that the knowledge Pierce *must have had* (or should have had) as to the fire truck's dangerousness relative to the jury's conclusion that Pierce was negligent in failing to adequately

warn (J.I. Nos. 32 & 33),[13] is inconsistent with the *lack* of any knowledge about defects that must

exist in order for the government contractor defense to apply.[14] *See id*. at p. 14 ("The jury,

following Instruction No. 33, must have found that Pierce as a product seller knew or reasonably

should have known that the product posed a substantial risk of harm to persons or property.

These mandatory findings are irreconcilably inconsistent with the jury's finding following the

Instruction No. 43 that: . . . 'if there was a defect in such plans and specifications that

proximately caused injury to Blumhorst, Pierce should not have reasonably known about the

defect.'").

Again, there is a symmetry in Blumhorst's argument when considering the jury

instructions provided at the end of trial.  Though each relevant instruction contains an accurate

statement of the law when considered on its own, their respective elements are arguably

incapable of being applied together, owing to the as-written discrepancies in the quantum of

knowledge applicable to negligence and government contractor defense theories – a possibility

that had not been anticipated by the undersigned, nor pointed out by any of the parties up until

this point by either an objection to the at-issue jury instructions (on this uniquely-specific basis)

---

[13]  The jury instructions stated in relevant part that, "[i]n determining whether Pierce was negligent, I instruct you that the product seller owes a duty to exercise ordinary care to warn all those who may reasonably be expected to use its product where the seller: (1) knows or should know that the product is unreasonably dangerous while being used with ordinary care; and (2) knows or should know that those who may reasonably be expected to use the product may not realize the danger."  J.I. No. 32 (Docket No. 246); *see also id*. at J.I. No. 33.

[14]  The jury instructions stated in relevant party that, for the government contractor defense to apply, (1) Pierce followed the plans and specifications for the fire truck, including its component parts; (2) the plans and specifications were prepared by a third-party; and (3) if there was a defect in such plans and specifications that proximately caused injury to Plaintiff, *Pierce should not have reasonably known about the defect*."  J.I. No. 43 (Docket No. 246) (emphasis added).

or by a re-ordering of the special verdict's questions to the jury. Alas, as this case neatly confirms, hindsight is always 20/20.

Compounding this knotty issue, accepting Blumhorst's arguments *in toto* would mean that the government contractor defense cannot apply as a matter of law to a negligence (failure to warn) claim. If that were true, Blumhorst's argument for a new trial would naturally be on more persuasive footing. But that is not the case, and Blumhorst has never so moved for summary judgment and/or judgment as a matter of law on that express ground.

"It is well established that the government contractor defense articulated by the Supreme Court in *Boyle* [*v. United Technologies Corp.*, 487 U.S. 500 (1988)], may operate to defeat a state failure-to-warn claim." *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003 (7th Cir. 1996). *Boyle's* interest in "insulating" contractors from suits when "the government exercises its discretion and approves designs" extends to situations where it "approves warnings intended for users." *Id*. (quoting *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (9th Cir. 1995)). So, "'when state law would otherwise impose liability for a failure to warn, that law can be displaced when the contractor can show that: (1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government.'" *Getz v. Boeing Co.*, 654 F.3d 852, 866 (9th Cir. 2011) (quoting *Oliver*, 96 F.3d at 1003-04). "This means that the contractor must demonstrate that the government 'approved reasonably precise specifications' thereby limiting the contractor's 'ability to comply with [its] duty to warn.'" *Getz*, 654 F.3d at 866 (quoting *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 749 (9th Cir. 1997)).[15]

---

[15] Significantly, the case of *Craig Johnson Const., L.L.C. v. Floyd Town Architects, P.A.*, 134 P.3d 648 (Idaho 2006) – which the Court considered when drafting the jury instruction on

Pierce's arguments opposing Blumhorst's Motion for a New Trial are presented with this more refined definition of the government contractor defense in mind. *See* Opp. to Mot. for J. and/or New Trial, pp. 10-20 (Docket No. 258). And, if the Court was likewise inclined to approach Blumhorst's Motion for a New Trial the same way, Blumhorst might very well be left in the lurch.

For example, as to the more-developed government contractor defense definition's first element, it could be argued that the Bonneville Fire District evaluated bid proposals "according to specifications furnished by the Fire District and on the basis of delivery date and price as best suits the needs of the Fire District." Trial Ex. 531 at PMI 240. As to those specifications relating to the Waterous Pump, the Bonneville Fire District required:

> Pump shall be a Waterous CSV, 1250 GPM, single stage midship mounted centrifugal type, carefully designed in accordance with good modern practice. Pump shall be the class "A" type and shall deliver the percentage of rated discharge at pressure indicated below:
>
> 100% of rated capacity at 150 PSI net pump pressure
> 70% of rated capacity at 200 PSI net pump pressure
> 50% of rated capacity at 250 PSI net pump pressure
>
> ....
>
> A Waterous adjustable relief valve, specifically designed for fire service, shall be provided. Valve shall be positive and quick acting and have instantaneous on-off control.

Trial Ex. 532 at PMI 261 & 263. Part and parcel with specifying a Waterous pump generally, the Bonneville Fire District went on to include the following related guidelines, stating in relevant part:

---

the government contractor defense – did not deal with a negligent failure to warn claim and, hence (and in hindsight), did not envelop the same level of elemental detail involved in applying the government contractor defense to such a claim. The Court is unaware of any Idaho law on this more specific issue.

- All pump controls and gauges to be located at the left (drivers) side of the apparatus and properly marked.

- Pump panel controls and gauges to be illuminated by a minimum of three incandescent lights installed under a polished stainless steel shield.

- The tags used for denoting the discharge pressure gauges, controls, outlets and drains shall be color coded with each discharge having its own unique color.

- The following are to be provided on the pump and gauge panels in a neat and orderly fashion: Engine oil pressure gauge with visual and audible warning; engine water temperature gauge with visual and audible warning; tachometer, electric; half engine speed counter; master pump drain control; engine throttle.

- An electric water level indicator to be provided on the gauge panel that registers by means of five individual lights at the following positions: Full, 3/4, ½, 1/4, and Empty. To further alert the pump operator the empty light must start flashing when water level drops below the 1/4 mark.

- The pump intake and discharge gauges shall be silicone filled and manufactured by Span Instruments. They shall be a minimum of 4.50" in diameter and shall have white faces with black lettering.

- Two indicator lights shall be provided adjacent to the pump shift inside the cab. One green light is to indicate the pump shift has been completed and be labeled "PUMP ENGAGED." The second green light is to indicate when the pump has been engaged and the chassis transmission is in pump gear. This indicator light is to be labeled "OK TO PUMP." A third green indicator light is to be installed adjacent to the hand throttle on the pump panel. It is to indicate either pump is engaged and road transmission is in pump gear or road transmission is in neutral and pump is not engaged. This light be labeled "WARNING: DO NOT OPEN THROTTLE UNLESS LIGHT IS ON."

- A relief valve integral with the fire pump shall be installed on the suction side of the pump, pre-set at 125 PSIG. The outlet is to terminate below the left side, visible to the operator, and

> shall be furnished with a 2.50" NST adapter and a "Intake Pressure Relief Outlet - Do Not Cap" warning tag.
>
> - When in the off position the relief valve shall functionally be removed from the system. When turned back on it shall again monitor and maintain the pressure the relief valve was set at the last time it was used. Control for adjusting the pressure to be elliptical shaped for positive grip. An easily removable pilot valve strainer shall be provided and be accessible from pump operators panel. Indicator lights (two) shall be furnished to show position of relief valve – amber for open and green for closed.
>
> - Two (2) pump manuals from the pump manufacturer shall be furnished with the apparatus. Manuals to cover pump operation, maintenance, and parts.[16]

*Id*. at PMI 262-263, 265, & 269-271 (emphasis in original). From this, Pierce argues that the Bonneville Fire District exercised its discretion and approved the fire truck's specifications, its listed safeguards, and the warnings contained in the Waterous manual. *See* Opp. to Mot. for J. and/or New Trial, pp. 12-16 (Docket No. 258) (quoting *Tate*, 55 F.3d at 1157 ("Government *discretion* is required, not dictation or prohibition of warnings. Where a contractor proposes warnings that the government substantively approves, and satisfies the second and third conditions, the [government contractor] defense displaces state law – even if the government did not 'prohibit' the contractor from proposing more alarming warnings.") (emphasis in original)). As such, according to Pierce, the jury was responsible for determining whether the Bonneville Fire District prepared plans and specifications detailing the fire truck's build-out, and/or exercised its discretion regarding the build's corresponding warnings.

---

[16] It is undisputed that the Waterous manual included the following warning: "WARNING. Always reduce pressure with engine throttle to ensure the relief valve is closed before turning the four way valve OFF." Opp. to Mot. for J. and/or New Trial, p. 16 (Docket No. 258) (emphasis in original).

The surrounding evidence on this issue was never clear-cut, as demonstrated by the Court's denial of Pierce's own Rule 50(a) motion, presented at the close of Blumhorst's case-in-chief:

> [O]ne element of Pierce's burden of proof is to demonstrate that Pierce was "following plans and specifications prepared by another party." That element is in dispute on the trial record, when reasonable inferences are drawn in favor of [Blumhorst]. Specifically, evidence was presented in [Blumhorst's] case-in-chief that "specifications" of the Waterous pump installed on the fire truck were prepared not by the Fire Department, but by Waterous and Pierce, and then selected, as one of various options of specifications provided by Waterous and Pierce. Pierce argues strongly that the "selection" was tantamount to a "specification," but that will be the subject of argument from counsel, and decision by the jury.

3/8/13 MDO, pp. 3-4 (Docket No. 249). However, it is possible to conceive how the jury could conclude that the Bonneville Fire District provided reasonably precise specifications for the fire truck and pump warnings – especially if any inferences made in Blumhorst's favor during Pierce's earlier motion for judgment as a matter of law are disregarded.

As to the more-developed government contractor defense definition's second element, the evidence could also be interpreted to reflect that Pierce drafted a bid proposal matching the Bonneville Fire District's specifications and, later, built a fire truck consistent with those specifications – including the incorporation of a Waterous pump, a pump panel with the specified warnings and indicator lights, and the required Waterous manuals. *See, e.g.*, Trial Ex. 532 at PMI 241 ("It is the intent of these specifications to cover the furnishing and delivery of a complete apparatus equipped as hereinafter specified. With a view to obtaining the best results and the most acceptable apparatus for service in the Fire Department, these specifications cover only the general requirements as to the type of construction and test to which the apparatus must

conform, together with certain details as to finish, equipment and appliances with which the successful bidder must conform.”).

Finally, as to the more-developed government contractor defense definition’s third element, it could be said that there is no evidence suggestive of the fact that Pierce (but not the Bonneville Fire District and/or its fire departments) was aware of the danger in abruptly turning the discharge relief valve off while still pressurized. Said another way, it is possible for the jury to have concluded either that Pierce was unaware of the specific hazard involved with turning off the discharge relief valve before reducing pressure, or that the Bonneville Fire District was already aware of that danger. Each of these scenarios is potentially capable of satisfying the third element of the government contractor defense as articulated in *Getz*. *See Oliver*, 96 F.3d at 1001 (“*Boyle* does not require the contractor to warn the government of every possible danger – only those known to it and not to the government.”).

*Except*, the problem with addressing Blumhorst’s Motion for a New Trial in the way Pierce impliedly proposes is that it fails to take into account the jury’s verdict, juxtaposed against the instruction on the general contractor defense that was *actually* provided to the jury. *See* Reply in Supp. of Mot. for J. and/or New Trial, pp. 7-9 (Docket No. 260) (“The jury’s finding that Pierce had proven its government contractor defense was based on [Instruction No.] 43. In its response, Pierce fails to refer to the standard set forth in [Instruction No.] 43. Instead, on page 10 of its response, Pierce sets forth different elements it claims it needed to prove to prevail on its defense. . . . . If Pierce is correct with regard to the law in its response now, the jury could not have been correct in reaching its verdict when relying on [Instruction No.] 43 then. It should be clear that neither Pierce nor Blumhorst is defending [Instruction No.] 43. . . . .

Based upon its response, not even Pierce appears willing to defend [Instruction No.] 43.").  That instruction (Instruction No. 43), while no-doubt similar to the template offered by Pierce in its briefing (and used by Pierce's counsel at oral argument over Blumhorst's counsel's objection), is different in at least one material respect: namely, it only addresses Pierce's knowledge of the fire truck's dangers; it does not speak to Pierce's knowledge of the fire truck's dangers alongside the extent of the Bonneville Fire District's knowledge of the same.

This is important because, even though it is possible to argue that the jury could have found the government contractor defense to insulate Pierce when considering a more encompassing definition of the defense, the fact remains that the jury was never asked to (and therefore did not) address the issue of the Bonneville Fire District's knowledge – a potential lynchpin issue, the resolution of which could be the difference between whether the government contractor defense applies and, thus, whether Blumhorst or Pierce prevails.  Under these circumstances, substituting out the jury's absolute role in favor of an ethereal determination of what that jury might find (even on an issue not heretofore considered by that jury) strikes the undersigned as foolhardy, despite what may otherwise be a benefit in bringing closure upon the case.  The Court is certainly empowered under applicable law and rules to undo or revise jury decisions in appropriate circumstances.  However, in response to Blumhorst's argument about the irreconcilable nature of the verdict that was returned, Pierce is not asking the Court to undo a jury's finding, but rather to *suppose* what the jury's finding might have been had the jury been instructed in a slightly different manner than actually occurred, to support the verdict that was returned.

What is left, then, is a situation where, recognizing the jury instructions that went into it, the jury's Special Verdict Form is unclear.  It is possible the jury thought Pierce was not

negligent in failing to warn (Pierce not liable); or that Pierce was negligent in failing to warn, but that the government contractor defense applied (Pierce not liable); or, finally, that Pierce was negligent in failing to warn, and that the government contractor defense did not apply (Pierce liable). Here, there is no fundamentally just approach to harmonize the Special Verdict Form. It is the Court's responsibility, particularly when also considering the possible infirmity in the jury instructions underlying the verdict, to grant Blumhorst's request for a new trial. Under the circumstances detailed in this Memorandum Decision and Order, it would be a miscarriage of justice to allow judgment in Pierce's favor to stand. Blumhorst's Motion for a New Trial is granted on this ground.

*c. Akron's Negligence*

On the Special Verdict Form, the jury found that Akron was negligent and that Akron's negligence proximately caused Blumhorst's injuries. *See* Special Verdict Form, p. 3 (Docket No. 247). Blumhorst's argument that Pierce did not meet its burden of proving Akron's negligence is inconsequential toward resolving his Motion for a New Trial.[17] Even if Akron is *not* negligent as a matter of law, the jury's findings as to Pierce remain unaffected, notwithstanding any questions presented by the Special Verdict Form as to Pierce's liability (*see*

---

[17] During deliberations, the jury submitted the following statement: "We cannot answer Question 10 on condition of lack of evidence [and] we were instructed not to consider Akron Brass in this case." Jury Question No. 1 (Docket No. 242). In the context of that particular stage of the trial and deliberations, it seemed apparent that the jury had navigated through the preceding questions on the Special Verdict Form and were at the point of allocating fault. Hence, the undersigned answered the jury's question and instructed it to "consider whatever evidence you find in the record as to whether or not Akron Brass bears some comparative fault, and answer Question 10 based upon that evidence." *Id*. This response to the jury's question was discussed with counsel before it was given, and no objection was raised. Based upon the special verdict that was finally returned, the jury need not have answered Question 10, but harmlessly did so anyway.

*supra*). In short, because the jury's consideration of Akron's negligence, contrasted against the bigger picture, does not represent a miscarriage of justice that would warrant a new trial. Blumhorst's Motion for a New Trial is denied on this ground.

## III. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Blumhorst's Motion for Judgment as a Matter of Law and for a New Trial (Docket No. 255) is GRANTED, in part, and DENIED, in part. Blumhorst's request for judgment as a matter of law is denied while Blumhorst's request for a new trial is granted.

2. Pierce's Request for Judicial Notice in Support of Pierce Manufacturing Inc.'s Response to Plaintiff's Motion for Judgment as a Matter of Law and for a New Trial Filed on March 27, 2013 (Docket No. 259) is DENIED as moot.[18]

A separate Notice/Order will be forthcoming, speaking to the procedural logistics of this action's progression forward.

DATED: **March 28, 2014**

Honorable Ronald E. Bush
U. S. Magistrate Judge

[18] In addition to being moot, the Court notes that the cited authority for such a request appears to be inapplicable California state law.